# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

  v.                                                    Case No. 18-CR-732 WJ

CRYSTAL LACHONNE HALL,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION TO COMPEL COMPLIANCE WITH RULE 17 SUBPOENA
## AND FOR SANCTIONS PURSUANT TO THIS COURT'S CONTEMPT AUTHORITY

      THIS MATTER comes before the Court following a hearing upon Defendant's *Ex Parte* Motion to Compel Compliance with Rule 17 Subpoena and for Sanctions Pursuant to this Court's Contempt Authority Under 28 U.S.C. §636(e), filed June 20, 2018 **(Doc. 43)**.[1] Defendant moves the Court to compel compliance by Greyhound Lines, Inc. with a Rule 17(c) subpoena permitted by this Court or otherwise hold Greyhound in contempt pursuant to Rules 17(g) and 42 of the Federal Rules of Criminal Procedure.[2] Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is denied.

---

[1] The motion was filed *ex parte,* but defense counsel later acknowledged that there was no need to seal the pleadings. *See* Doc. 50.

[2] Defendant also refers to 28 U.S.C. §636(e) as a basis for a contempt order, but that provision is inapplicable since the matter is being addressed by the undersigned, who is the Article III Judge assigned to the case.

## BACKGROUND

On February 15, 2018 DEA agents arrested Crystal Lachonne Hall ("Defendant") while she was onboard a Greyhound Lines, Inc. ("Greyhound") bus in Albuquerque, New Mexico. Following her arrest, defense counsel mailed a preservation request asking Greyhound to preserve material that would be the subject of a subpoena that she would seek through this Court: surveillance video, a passenger manifest, and any communication between the arresting officer, DEA Agent Perry, and Greyhound by which Agent Perry gained access to the passenger manifest. Ex. A. On February 28, 2018, counsel for Greyhound asked whether defense counsel could narrow the preservation request as it related to the surveillance video. Defense counsel responded that he was just interested in "footage that captures Agent Perry or his partner surrounding the incident."

On March 7, 2018, the Court granted Defendant's request for a Rule 17(c) subpoena to serve on Greyhound to obtain the three categories of material listed in the preservation request, finding that the three categories requested were properly included in the subpoena. The Court ordered that the material responsive to the subpoena was to be delivered to Court chambers. Doc. 15.[3] Personal service was effected on a Greyhound employee, and a copy of the subpoena was e-mailed to Greyhound counsel, Mr. Phil Cheves, on the same day of service.

According to defense counsel, in mid-April, 2018, Court chambers received four thumb drives containing a surveillance video and what appeared to be a passenger manifest for the bus on which Ms. Hall was arrested. Exs. C & D. Defendant contends that what was submitted in response to the subpoena was inadequate. Initially, Defendant claimed that three categories of material were insufficiently produced: (1) surveillance footage; (2) passenger manifest lists; and

---

[3] United States Magistrate Judge Laura Fashing issued the Order granting the subpoena and so the material was initially sent to her chambers. The thumb drives were transferred to chambers of the undersigned for review.

(3) communications between Agent Perry and Greyhound or Greyhound employees by which he gained access to passenger manifests. Greyhound turned over all the video footage which stated that it possessed. Greyhound has a total of 52 cameras but footage was available and preserved from only 20 of those cameras. Many hours of video recording were produced, but according to defense counsel, none of the footage included anything related to the investigation or arrest of Ms. Hall; specifically, there was no footage that related to the investigation or arrest of Defendant. Greyhound attributes the problems with the video recording to ongoing systemic and operational issues with the surveillance cameras and DVR's that are responsible for recording different areas of the terminal. Greyhound also provided a passenger manifest to defense counsel, but Ms. Hall's name was not on that list. Greyhound later provided second and third supplemental pre-departure lists to Defendant.

At the hearing, defense counsel waived any further concern about the first two categories of material, and narrowed the issues in the motion down to these two:

1. communications between Greyhound and Agent Perry; and

2. whether sanctions should be imposed on Greyhound for failure to comply with the subpoena.

**DISCUSSION**

One witness, David O. Streiff, testified at the hearing. Mr. Streiff is the security operations manager for Greyhound, North America. He testified recently on behalf of Greyhound in a similar case in which defense counsel, Mr. Alejandro Fernandez (also representing Mr. Ramos-Burciaga in that case) claimed that Greyhound had failed to preserve video surveillance footage in response to a preservation request. *See U.S. v. Ramos-Burciaga,* 17-CR-002236 WJ. Following a hearing in that case, the Court determined that Greyhound was

not an agent of the Government and concluded that Greyhound's failure to preserve the video tape could not be attributed to the Government. *See Ramos-Burciaga,* Doc. 66.

In the instant motion, Defendant revisits what he considers to be a deficiency in Greyhound's response to a Rule 17 subpoena. He contends that Greyhound allows certain company policies to be violated in order to favor law enforcement operations, such as policies regarding disclosure of passenger manifests and the copying of video surveillance footage. Defendants contends that even though the Court has determined that Greyhound is not an agent of the Government, the company on its own continues to frustrate the judicial process by willfully allowing these internal policy violations.

## I.     Legal Standard

The statute governing the punishment of contempt is 18 U.S.C. §401(3) which provides that a district court has the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, . . . as "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." There are three elements to contempt under §401(3): (1) a reasonably specific order, (2) violation of the order, and (3) the willful intent to violate the order." *United States v. Voss*, 82 F.3d 1521, 1525 (10th Cir. 1996).

Rule 17(g) of the Federal Rules of Criminal Procedure provides allows a court to "hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district." Fed.R.Crim.P. 42(a)(1) affords notice and opportunity to explain why the party has not complied, since willfulness is an element of criminal contempt. *See United States v. Greyhound Corp.*, 508 F.2d 529, 531 (7th Cir. 1974) ("Willfulness is, of course, an element of criminal contempt and must be proved beyond a reasonable doubt").

## II.    Communications Between Greyhound and Agent Perry

One of the issues in the *Ramos-Burciaga* case was whether the defendant was entitled to know whether a Greyhound employee was acting as a confidential informant who was paid to provide passenger information to the DEA. The Court concluded that even if this were the case, "an agency relationship would still not be formed between the DEA and Greyhound." *Ramos-Burciaga,* 17-CR-02236-WJ, Doc. 66 at 13. In this case, counsel continues to pursue disclosure of the informant's identity and claims that this issue is relevant to Greyhound's alleged willful disregard of the subpoena.

Greyhound's position has been and continues to be, that it does not possess any communications between the company (or its employees) and Agent Perry concerning how Agent Perry is obtaining passenger manifests. There was also no testimony at the hearing in this case suggesting that these communications exist and defense counsel did not spend much time insisting otherwise. Accordingly, the Court denies Defendant's motion to compel disclosure of communications that do not exist.

## III. Whether Sanctions are Appropriate Against Greyhound

The parties' arguments at the hearing focused mainly on the sanctions issue. Defendant claims that Greyhound extends a great deal of latitude to law enforcement (namely, Agent Perry) and is not concerned when its policies and procedures are "flouted" by law enforcement, while at the same time Greyhound appears to minimize similar requests made by defense counsel. Defendant argues that this conduct demonstrates a willingness and intent *not* to fully comply with the Court-ordered subpoena.

### A. Disclosure of Passenger Manifest

Defendant views Agent Perry's refusal to disclose the name of the individual who provided him with the passenger manifest as the "most egregious example" of how company

5

protocols are tacitly ignored in favor in law enforcement. Greyhound has previously acknowledged that "it is against company policy to provide information without permission of Greyhound." *Ramos-Burciaga,* 17-CR-02236-WJ, Doc. 66 at 13. At the hearing in the instant case, Mr. Streiff testified that when it became apparent that Agent Perry may possibly be getting the passenger lists from a Greyhound employee rather than following protocol, he started an investigation into the matter, but the investigation has not yielded any results. Mr. Streiff also explained that he never bothered to ask Agent Perry the name of the individual providing the passenger lists because he knew that Agent Perry would refuse to disclose it.

Defense counsel considers Greyhound's handling of the passenger manifest issue to be an example of the way Greyhound ignores violations of its policies and procedures if it benefits law enforcement. In his closing argument, defense counsel suggested that if *he* were in Mr. Streiff's position and Agent Perry refused to tell him the name of the informant, he would tell Agent Perry he was going to "suspend operations until we're prepared to have a candid conversation" because he would not allow a Greyhound employee to flout company procedures. Defense counsel's idea seems perfectly reasonable from his standpoint as a legal advocate, but it probably has questionable merit as a business solution from Greyhound's point of view. The Court can think of at least two reasons why company executives may not warm to the idea of halting law enforcement operations at one of its bus terminals: (1) it could have a negative impact on public safety concerns; and (2) suspending law enforcement operations in itself could call into question Greyhound's compliance with its own Law Enforcement Operations Procedure.[4]

---

[4] Mr. Streiff described the procedure as an agreement between law enforcement and Greyhound concerning how law enforcement would operate at Greyhound terminals. Mr. Streiff stated that the actual procedures were determined by the City Manager of the terminal and Greyhound and that law enforcement did not have a voice in whether or not it agreed with those procedures.

Greyhound's conduct with respect to the disclosure of passenger manifests does not constitute a willful resistance to the requests made in the Rule 17 subpoena. First, it cannot be said that Greyhound was indifferent to the passenger manifest disclosure problem since an investigation was conducted but did not resolve the matter. Second (and more important), Greyhound may not be directing all its resources into discovering whether an employee is providing Agent Perry with passenger manifest lists, but it is not obliged to do so. Greyhound has unfortunately become caught in the middle of Defendant's efforts to uncover the identity of a possible confidential informant within the roster of Greyhound employees, but its activities as a transportatopm business does not extend to making it easier for defense counsel to defend his client. Therefore, Defendant's motion for sanctions on this basis is denied.

B.  Video Surveillance Recordings

Mr. Streiff testified that Greyhound receives requests for camera surveillance footage which falls into many categories, to name a few: requests from insurance companies for "slips, trips," and falls; law enforcement and special operations for sex trafficking, missing persons and fugitive recovery. Mr. Streiff testified that the surveillance system dysfunction was due to either technical or human error, with the latter being due to unfamiliarity with how the DVR part of the system functioned or lack of training.

Defendant contends that Greyhound's failure to fix ongoing problems with its video surveillance is typical of the company's "permissive latitude" given to law enforcement. In addition, defense counsel levels a more sinister charge against Greyhound: because none of the footage produced shows Agent Perry or Defendant, Greyhound intentionally selected footage from certain cameras in response to the subpoena request. This necessarily assumes not only that a Greyhound in engaging in such selection, but also that Greyhound is aware this is occurring.

7

However, Defendant attributes intent and conduct on the part of Greyhound that does not exist; there is absolutely no evidence of anyone at Greyhound purposefully withholding surveillance footage or directing that such footage be withheld selectively in a manner that is biased against requests from defense counsel.

At best, Defendant can only charge Greyhound with failing to resolving its video surveillance issues. In particular, defense counsel takes issue with the way the surveillance program functions: (1) any Greyhound employee can be designated to download video on the site and as a result, no *one* person is accountable for this function; (2) there is no definitive policy on how to respond to subpoenas; and (3) Greyhound's efforts to repair the system have been only minimally unsuccessful. These challenges may constitute sound business practices, but failure to take up these challenges does not result in a finding that Greyhound either resisted or refused to comply with the Rule 17 subpoena.

At the hearing, Mr. Streiff described the difficulties Greyhound has been experiencing with the surveillance system and ways the company has been trying to resolve them:

- Three DVR's were replaced in 2018 alone, but problems persisted because of connectivity issues between the new DVR's and the older analog camera system;

- Greyhound has attempted to address training and personnel deficiencies. Mr. Streiff stated that the last Greyhound employee responsible for downloading video, Ms. Maria Avila-Gomez, was fired because of her inability to correctly download video;[5]

- Also, Greyhound did in fact put into place a new subpoena policy for the sole purpose of aiding in the company's handling of court-ordered subponeas; and

- The company has made efforts to improve the video copying process in response to requests for this material.

---

[5] Testimony regarding Greyhound training on the surveillance system, including testimony from Ms. Avila-Gomez, can be found in the *Ramos-Burciaga* case which occurred April 11, 2018, *see* Doc. 61.

There is no evidence that Greyhound's response to requests from law enforcement is treated any differently than requests from defense counsel. Mr. Streiff testified that there have been instances in the past few years where the surveillance system dysfunction affected *all* requests for video footage, including requests by law enforcement, although he had no recollection of specific instances in the past six months.

Defense counsel takes the position that Greyhound has an obligation to do what it takes to make the surveillance system fully operational and to institute what he considers to be better business practices, such as having only one employee accountable for video downloads. Greyhound has no such obligation. The company's sole obligation with respect to the Rule 17 subpoena was to provide defense counsel with the materials it possessed, and it did exactly that. Greyhound did not take the matter lightly: by defense counsel's own admission, the company produced a great deal of video footage and later made supplemental productions of passenger lists.

Greyhound is a common carrier engaged in the business of transporting people and property.[6] One would expect that Greyhound makes decisions based on what is best for this business, and not to ensure that video footage is available from all the surveillance cameras in order to accommodate requests from either law enforcement or defense counsel. At the hearing, defense counsel himself described the state of affairs at the Albuquerque terminal as "in shambles" and in "disarray." This description does not fit any definition of contemptable conduct. Defense counsel may disagree with Greyhound's business practices, but there is no

---

[6] *See, e.g.,* NMSA 1978, §64-1-6 (definition of "common carrier" as "corporation . . . engaged, either regularly or for the time being only, in the transportation of persons or property for hire between points within this state or from a point within this state and return thereto. . . .").

evidence that Greyhound has shown a willful intent to violate the Rule 17 subpoena. Therefore, there is no basis for the Court to impose sanctions.[7]

## CONCLUSION

In sum, the Court finds and concludes that there is no evidence that Greyhound either disobeyed or resisted complying with the Rule 17 subpoena at issue here; instead, Greyhound demonstrated a willingness to fully comply with the subpoena. Further, there is no evidence that Greyhound gives latitude to employees to violate company policy or protocol in order to favor law enforcement, or that the company is selective about how it responds to requests for information from defense counsel.

As mentioned above, defense counsel has previously challenged Greyhound's practices with respect to its responses to a Rule 17 subpoena. By this time, defense counsel should see the proverbial brick wall in front of him, based on the Court's rulings in this motion and in the *Ramos-Burciaga* case, 17-CR-002236 WJ on matters involving Greyhound's responses to another Rule 17 subpoena. It is very likely that the Court will treat similar challenges based on similar circumstances in exactly the same manner. As the Court has previously concluded, Greyhound is not an agent of the Government, and so if it is operating in a way that is not convenient for defense counsel, there really is not much the Court can do.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Compel Compliance with Rule 17 Subpoena and for Sanctions Pursuant to this Court's Contempt Authority Under 28 U.S.C.

---

[7] During the hearing, defense counsel also took issue with Mr. Streiff's "nonchalant" attitude regarding the fact that at one time, Agent Perry had a key to one of the terminal offices, which was in violation of company policy that individuals had to be escorted around the terminal. Greyhound may have provided Agent Perry with a key for various reasons, including for mere convenience considering Agent Perry's frequent visits there. The fact is that the key has been returned and the Court fails to see how a "nonchalant" attitude toward the issue demonstrates either a bias toward law enforcement or an intent to avoid full compliance with the subpoena.

§636(e) **(Doc. 43)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE